UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOLEX GOLF INDUSTRIES, INC., </br></br> Plaintiff, </br></br> vs. </br></br> CHINA SHIPBUILDING INDUSTRY, CORPORATION, et al., </br></br> Defendants. | CASE NO. CV09-2248-R </br></br> FINDINGS OF FACT & CONCLUSIONS OF LAW |

Defendant's Motion for Summary Judgment was heard by the Court on March 18, 2013. The Court found in favor of Defendant O-Ta Precision Industries Co., Ltd. ("O-Ta" or "Defendant") and granted Defendant's Motion. Defendant was ordered to prepare proposed findings of fact and conclusions of law, which Defendant provided to the Court on April 19, 2013. The Court has considered the proposed findings as well as the objections of Plaintiff Folex Golf Industries, Inc., ("Folex" or "Plaintiff"). In view of those objections, and in consideration of the evidence submitted by the parties on summary judgment, the Court issues the following findings of fact and conclusions of law.

**Procedural History**

1. Plaintiff initiated this action against Defendant on March 31, 2009. (Docket No. 1.) The operative First Amended Complaint ("FAC") was filed on June 26, 2009. (Docket No. 5.).

2. In addition to O-Ta two other parties were named as defendants in the First Amended Complaint: Luoyang Ship Material Research Institute ("LMSRI") and China Shipbuilding Industry

Corporation ("China Shipbuilding"). Plaintiff alleges LMSRI is a subsidiary of China Shipbuilding. (FAC ¶ 5.)

3. Defendant moved for summary judgment on all of Plaintiff's claims on August 16, 2010. (Docket No. 53.) The Court granted Defendant's motion on October 4, 2010. (Docket No. 86.)

4. Plaintiff appealed the Court's ruling on summary judgment to the Ninth Circuit Court of Appeals. (Docket No. 90.) The appeal was limited to five of Plaintiff's twelve claims. (*Id.*)

5. The Ninth Circuit reversed this Court's ruling that the five claims were barred as a matter of law by the statute of limitations. (Docket No. 119.)

6. Following remand from the Ninth Circuit, Defendant again moved for summary judgment on grounds not previously been considered. (Docket No. 143.)

7. Defendant and Plaintiff fully briefed the relevant issues, and the Court heard oral argument on Defendant's motion for summary judgment on March 18, 2013. (Docket Nos. 143, 188, 200, 202.)

8. After full consideration of the evidence submitted by and argument of the parties, the Court granted Defendant's motion for summary judgment. (Docket No. 202.)

**Findings of Fact**

1. On November 23, 1996, SST Company of the United States ("SST") entered into an agency agreement with LSMRI ("1996 SST Agreement"). (Kesselman Decl., Exh. D.) Defendant O-Ta was not a party or signatory to the 1996 SST Agreement.

2. The 1996 SST Agreement provided that LSMRI agreed to pay SST a 6% - 10% commission on all sales made directly by LSMRI to customers introduced by SST. (*Id.*) LSMRI agreed to make payments to SST in a form designated by SST within five business days after LSMRI received payment from a customer. (*Id.*)

3. In addition to the 1996 SST Agreement, Folex Golf Industries, Inc., an assignee of SST, entered into another agency agreement with LSMRI ("1996 Folex Agreement"). (Kesselman Decl., Exh. F.) Defendant O-Ta was not a party or signatory to the 1996 Folex Agreement. (*Id.*)

4. The 1996 Folex Agreement provided that LSMRI agreed to pay Folex a 6% - 10% commission on all sales made directly by LSMRI to customers introduced by Folex. (*Id.*) LSMRI agreed that customers introduced by Folex would remit payment directly to Folex, which would then deduct its

commission and remit the remaining balance to LSMRI. (*Id.*)

5. In February of 2000, Folex and LSMRI entered into an addendum to agency agreement ("2000 Addendum Agreement"). (Kesselman Decl., Exh. F.) Defendant O-Ta was not a party or signatory to the 2000 Addendum Agreement. (*Id.*)

6. Under the 2000 Addendum Agreement, O-TA could make purchases from suppliers other than LSMRI if, among other things, LSMRI's pricing was not competitive. (*Id.*)

7. Pursuant to paragraph 8 of the 2000 Addendum Agreement, Folex and LSMRI expressly agreed that either party "will have the right to pursue legal litigation in the United States or China against the party in breach of this agreement." (*Id.*)

8. On October 20, 2000, O-TA entered into a Cooperation Agreement with LSMRI (hereinafter the "2000 Cooperation Agreement"). (Kesselman Decl., Exh. H.) Pursuant to the 2000 Cooperation Agreement, O-TA and LSMRI agreed that the "parties should resolve problems they encounter with a spirit of amicable consultation and consent to request the third party, [Folex], to act as the mediator." (*See id.*) The 2000 Cooperation Agreement was signed by O-TA, LSMRI and Folex. Folex signed the 2000 Cooperation Agreement in its capacity as the agreed upon "Mediator" between O-TA and LSMRI. (*See id.*)

9. O-TA was a customer of LSMRI and purchased certain titanium casting products from LSMRI. In 1998, O-TA was instructed to remit payment directly to Folex. The record reflects that Folex would then take its commission and forward the remainder to LSMRI. Those instructions remained unchanged for approximately six years until March or April 2005, when O-TA began remitting payment directly to LSMRI. (Declaration of Lin, Chon Chen ("Lin Decl.") ¶ 2.)

10. In October 2005, LSMRI filed a Statement of Claim against SST Company and Folex in the Peoples Republic of China ("PRC"). (Declaration of Wang Chun, (Docket Nos. 26 and 28)).

11. The Statement of Claim sought dissolution of the 1996 SST Agreement, the 1996 Folex Agreement, and the 2000 Addendum Agreement. *Id.*

12. The Statement of Claim also sought to have Folex return all commissions paid by LSMRI since December 2002. *Id.*

13. On October 31, 2005, the PRC Court accepted the case. *Id.*

14. Folex officer, Chris Fu, testified that he was aware of the PRC lawsuit by at least December 2008. (Kesselman Decl., Exh. G, (Deposition of Chris Fu, Vol. I, August 31, 2010, 69:17-25)). The record also reveals that Folex wrote a letter to the Central Commission for Discipline of the Communist Party of China ("CPC Central Commission") expressly admitting it knew of the PRC lawsuit in 2005. (Supp. Jun Wang Decl., Ex. B at 8.)

15. The record demonstrates that there were several attempts at personal service on Folex and its officers. LSMRI was unable to successfully effectuate personal service via hand delivery. After those several attempts at personal service, on March 21, 2009, LSMRI published a notice of the lawsuit against Folex in the People's Court News, a PRC newspaper. (April 19, 2010 Wang Decl., Exh. J (Docket No. 26).)

16. On March 10, 2010, the Intermediate People's Court of China entered a civil judgment dissolving the 2000 Addendum Agreement and finding that "pursuant to Article 97 of the 'Contract Law of the People's Republic of China,' the Plaintiff [LSMRI] is not compelled to pay any commission [to Folex/SST Company] after March 2005" and further ordered the commission agreement "dissolved" as of that date (the "Chinese judgment"). (Supplemental Declaration of Jun Wang, February 28, 2013, ("Supp. Jun Wang Decl."), Exh. A.)

17. In a seven page, single-spaced decision, the PRC court ruled that Folex breached its obligations under the 2000 Addendum Agreement. (*Id.*)

18. The PRC court took note of Chris Fu's statement in 2002 that Folex would no longer cooperate in providing any price quotes or confirmations as required by the contract. (*Id.*)

19. The PRC Court denied LMSRI's request to return $2.1 million in commissions paid to Folex between December 2002 and February 2005. (*Id.*)

20. Folex admits that it received a full copy of the PRC judgment on July 12, 2010. (Kesselman Decl., Exh. G at 68:19-25-69:1).

**Conclusions of Law**

1. Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial

4

and summary judgment should be granted. *See Matsushita Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 487, 106 S. Ct. 1348, 1356 (1986).

2. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 1-6 S. Ct. 2548, 2552-53 (1986). A court evaluates the evidence to determine whether there is a genuine need for trial. If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial'" and summary judgment should be granted. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. Summary judgment is appropriate when the evidence is so one-sided that a party must prevail as a matter of law. It is also appropriate when a party fails to offer sufficient evidence to support any essential element of a claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986); *Celotex*, 477 U.S. at 322-23; 106 S. Ct. at 2552-53.

3. In opposing a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). It must introduce credible evidence demonstrating a genuine dispute exists as to specific material facts. *Matsushita*, 475 U.S. at 586 n.11, 106 S. Ct. At 1355 n.11. This requires more than a "metaphysical doubt . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 586-587, 106 S. Ct. at 1356 (citation omitted).

4. Reasonable inferences are drawn in favor of the opposing party. However, to be reasonable, an inference must be based on credible evidence. Bald assertions based on a mere scintilla of evidence will not preclude summary judgment. *Richards v. Neilsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987); *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). Where the record contradicts a party's allegations to the extent that no reasonable jury could believe them, a court is justified in adopting the story supported by the bulk of the evidence. *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007) (summary judgment granted where evidence completely discredited claims).

5. First, the Court finds that California's adaptation of the Uniform Foreign-Country Money Judgment Act ("UFCMJRA) does not apply in this case. The UFCMJRA only applies to the extent that

the judgment grants or denies recovery of a sum of money. Cal. Code Civ. Proc. § 1715(a). Here, O-TA is requesting that this Court recognize and enforce the PRC judgment prospectively to deny recovery of unremunerated commissions based on the PRC court's holding that the contract was null and void. That holding is not a money judgment within the meaning of the statute. *See Allstate Ins. Co. v. Administratia Asigurarilor de Stat*, 962 F.Supp 420, 425 (S.D.N.Y. 1997).

6. But Defendant O-TA is entitled to summary judgment because Plaintiff Folex is collaterally estopped by the earlier judgment rendered in the PRC, declaring that the Folex-LSMRI contract is null and void. Since all of Folex' claims depend on the existence of an enforceable contract, recognition of the PRC judgment precludes Folex' relitigation of the very same issues in this Court.

7. International Comity is one mechanism for recognition of foreign country judgments. Cal. Code Civ. Proc. § 1723.

8. Comity serves to promote justice between individuals and to produce a friendly intercourse between other sovereignties. *Hilton v. Guyot*, 159 U.S. 113, 165, 16 S.Ct. 113, 144 (1895). Generally, absent equitable or legal grounds for nonenforcement, a foreign judgment should be recognized as a matter of international comity. *Id.*; *see also Manco Contracting Co. (WL.L.) v. Bezdikian*, 45 Cal 4th 192, 198 (2008); *Kohn v. Am. Metal Climax, Inc.*, 458 F.2d 255, 303-05 (3d Cir. 1972).

9. Folex does not contest that the PRC judgment was rendered under a judicial system that generally provides impartial tribunals or procedures compatible with requirements of due process of law. Indeed, U.S. courts consistently acknowledge the adequacy of due process in the PRC judicial system. *See, e.g., Hubei Gezhouba Salian Indus. Co., Ltd. v. Robinson Helicopter Co., Inc.*, No. CVO 1798-FMC-SSX. 2009 U.S. Dist. LEXIS 62782 (C.D. Cal. July 22, 2009) (recognizing judgment because the PRC judicial system had afforded the California-based defendant appropriate due process); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184 (2007) (U.S. Supreme Court dismissing case due to alternative forum in China); *China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106, 1110 (N.D. Ohio 2000) (concluding that China presented an adequate forum.); *In re Compania Naviera Joanna S.A.*, 531 F. Supp. 2d 680 (D.S.C. 2007) (granting petitioners' motion to dismiss on forum non conveniens grounds, concluding that China provides a suitable alternative forum); *see also Guimei v. General Electric Co.*, 172 Cal. App. 4th 689,

700-01 (2009).

10. The PRC Court had personal jurisdiction over Folex. Folex expressly consented to being sued in a Chinese court when it signed the 2000 Addendum Agreement, and it had sufficient contacts with China as its officers regularly visited China to conduct business. (Kesselman Decl., Exh. F); (Fu Decl., ¶ 8).

9. It is undisputed that the PRC Court had subject matter jurisdiction over the dispute between LSMRI and Folex. The parties expressly agreed that the commission agreement was subject to PRC law. (Kesselman Decl., Exh. F; *see also* Blecher Decl. Ex. A at 4.)

10. Folex has proffered evidence suggesting the possibility of impropriety in the PRC judgment. However, Folex' proffer does not amount to more than a scintilla of evidence to support the contention that the PRC judgment in this particular case was obtained by fraud or otherwise violated due process.

11. To recognize a foreign judgment, this Court need only ensure that the safeguards of due process were maintained, which in this case requires only that Folex receive fair notice of a lawsuit such that it had a fair opportunity to object and defend itself. *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir. 1980). The touchstone of the analysis is whether the defendant in the foreign action had reasonable notice of the proceedings against it. *Id.*

12. Here, the record is clear that Folex was on notice of a proceeding against it, and that informal notice was followed by a formal notice via publication in the PRC. In fact, Folex was on actual notice of the lawsuit before the PRC Court issued the judgment. Aside from LSMRl's attempts at personal service, Folex admits in an August 6, 2006 complaint letter to the PRC authorities that it was aware of the lawsuit in 2005. (Supp. Jun Wang Decl., Exh. B.) Moreover, Chris Fu admits under oath that he had knowledge of the PRC lawsuit in December 2008. (Kesselman Decl., Ex. G [Fu Depo at 69:19-22].)

13. The Court finds that there was sufficient notice to provide Folex with a fair opportunity to respond and object to the proceedings in the PRC prior to the entry of judgment.

14. Consequently, based on long established principles of international comity, the Court concludes that the PRC judgment is entitled to recognition.

15. Further, the Court finds that the PRC judgment is enforceable and estops Folex from raising its claims in this case. *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir. 1980).

16. A federal court sitting in diversity applies the law of the state in which it sits with respect to the doctrine of collateral estoppel and conflicts of law. *See id.*

17. The Court concludes that the PRC judgment is entitled to the same preclusive effect as if the judgment were rendered by a California court. The general rule in California is that defendants are permitted to raise collateral estoppel as a defense to any issue cited in a prior adjudication where there was a final judgment on the merits. *Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668 (Cal. App. 3d Dist. 2008).

18. California permits non-mutual collateral estoppel to be asserted by defendants in a subsequent action. *Bernhard v. Bank of America*, 19 Cal.2d 807, 812-813, 122 P.2d 892 (1942); *Burdette v. Carrier Corp.*, at 1688 ("Both California and federal law allow the defensive use of issue preclusion by a party who was a stranger to the first action.").

19. Furthermore, under controlling Ninth Circuit and California law, issues adjudicated in a default judgment are recognized as having been actually litigated and decided for purposes of collateral estoppel. *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) ("The mere fact that 'judgment was secured by default does not warrant the application of a special rule'" with respect to collateral estoppel); *Gottlieb v. Kest*, 141 Cal. App. 4th 110, 149 (2006) ("California, on the other hand, accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations.").

20. Moreover, U.S. courts consistently recognize foreign default judgments to the same extent as judgments on the merits. *See, e.g, Bank of Montreal v. Kough*, 612 F .2d 467, 4 73 (9th Cir. 1980) (enforcing a default judgment rendered by a British Columbia court); *John Sanderson & Co. v. Judlow Jute Co.*, 569 F.2d 696 (1st Cir. 1978) (upholding enforcement of default judgment rendered by Australian court).

21. Because each of Folex' remaining claims depend upon the existence of a valid contractual relationship between Folex and LSMRI, and because the PRC Court expressly found the contract to be null and void as of March 2005, all of Folex' claims are barred as a matter of law by the doctrine of collateral estoppel.

/ / / / / / /

**Evidentiary Rulings**

1. The Court overrules Folex' evidentiary objection that relevant portions of the Jun Wang declarations should be stricken because they were not signed under penalty of perjury or with reference to the laws of the United States of America. To the extent that the Court relies on the Jun Wang declarations, the alleged deficiency was cured in the supplemental Jun Wang declaration dated February 28, 2013, which was signed under penalty of perjury and with reference to the laws of the United States of America. (Docket No. 198.)

2. The Court overrules Folex' evidentiary objections to the August 20, 2006 letter from Folex to the CPC Central Commission, attached as an exhibit to the Jun Wang declarations. The Court notes that Folex did not renew its objection to the letter when it was attached to the February 28, 2013 Supplemental Declaration of Jun Wang. (Supp. Jun Wang Decl., Exh. B). In addition, the August 20, 2006 letter, itself, is admissible as a business record. The content of the letter is admissible as an admission of a party opponent. The Court further notes that Chris Fu, Folex' officer, expressly admitted in deposition that Folex sent a complaint letter to the CPC Central Committee. (Kesselman Decl., Exh. G at pp. 44-46.)

3. Although the Court can rely entirely on the PRC Court's finding that notice was proper, the Court also overrules Folex' evidentiary objections to the newspaper publication attached as Exhibit J to the Wang Chun Declaration (Docket No. 26). A newspaper article is self-authenticating pursuant to Federal Rule of Evidence 902. The Court finds that the hearsay rule does not apply because the article is not offered for the truth of the matter asserted. It is simply offered to show that notice of the PRC lawsuit was published, a non-hearsay purpose.

4. The Court sustains O-TA's evidentiary objections to the Declaration of Junwei Wang because among other things, it contains multiple instances of inadmissible hearsay and lacks personal knowledge and foundation. Junwei Wang's statements in the declaration, which purport to recount conversations with Chinese court personnel, are inadmissible on hearsay grounds. Similarly, Junwei Wang's remaining statements are either not based upon personal knowledge or lack foundation.

/ / / / / / / /

/ / / / / / / /

**Conclusion**

1. For the foregoing reasons, the Court recognizes, on grounds of international comity, the PRC judgment and hereby grants O-TA's motion for summary judgment.

May 9, 2013.

                        MANUEL L. REAL
                UNITED STATES DISTRICT JUDGE