1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOLEX GOLF INDUSTRIES, INC. a California corporation,<br><br>       Plaintiff,<br><br>v.<br><br>CHINA SHIPBUILDING INDUSTRY CORPORATION, a Chinese company; LUOYANG SHIP MATERIAL RESEARCH INSTITUTE, a Chinese company; O-TA PRECISION INDUSTRIES CO., LTD., a Taiwan company; and DOES 1 through 100, inclusive,<br><br>       Defendants. | CASE NO.: 09-CV-02248 R (CWx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

1        On October 5, 2015, Defendant O-TA Precision Industries Co., Ltd.'s

2   ("Defendant" or "O-TA") Motion for Summary Judgment came on for regular

3   hearing in the above-entitled Court.

4        After consideration of the moving and opposing papers and allowing for oral

5   argument, and finding good cause, the Court finds that O-TA is entitled to

6   summary judgment as to all of Plaintiff Folex Golf Industries, Inc.'s ("Plaintiff" or

7   "Folex") remaining claims because they are barred by the applicable statutes of

8   limitation.

9   **I.    FINDINGS OF FACT**

10       **A.    <u>The Business Relationship Giving Rise to the Litigation.</u>**

11        1.    This lawsuit arises out of several contracts under which Folex asserts

12   that it was entitled to receive commissions from defendants Luoyang Ship Material

13   Research Institute ("LSMRI") and China Shipbuilding Industry Corporation

14   ("CSIC").[1]  O-TA was not a signatory to these commission contracts between

15   Folex and LSMRI.

16        2.    On November 23, 1996, Folex, using the name SST Company of the

17   United States ("SST"), entered into an "Agency Agreement" with LSMRI

18   (hereinafter "the 1996 SST-LSMRI Agreement").  (Declaration of David W.

19   Kesselman ("Kesselman Decl."), Ex. A.)  On November 23, 1996, Folex Golf

20   Industries, Inc./SST Company entered into another "Agency Contract" with

21   LSMRI (hereinafter "the 1996 Folex-LSMRI Contract").[2]  (Kesselman Decl., Ex.

22   B.)  In February 2000, Folex Corporation of the United States and its purported

23   subsidiary, Folex Golf Industries, entered into an "Addendum to Agency

24   Agreement" with LSMRI (hereinafter "the Folex-LSMRI 2000 Addendum").

25    

26   [1]   Folex alleges that CSIC is the parent company of LSMRI (FAC ¶ 5.)  Unless otherwise specified, for purposes of this ruling, both entities will be referred to as LSMRI.

27   [2]   Mr. Chris Fu of Folex testified that he believes the Folex-LSMRI contract was

28   back-dated and that it was actually signed on Nov 1, 1998.  (Kesselman Decl., Ex. E at 222:7-20; 225:23-226:20.)  For purposes of resolving this motion for summary judgment, the date of the contract is immaterial.

(Kesselman Decl., Ex. C.)  The 1996 Agency Agreement, the 1996 Agency Contract and the 2000 Addendum are referred to collectively as "the Commission Agreement."  It is undisputed that O-TA was not a signatory to the Commission Agreement.

3.     O-TA was a customer of LSMRI.  (Declaration of Lin Chon Chen ("Lin Decl."), ¶ 2.)  O-TA purchased titanium products from LSMRI.  (*Id.* at ¶¶ 2-3.)

4.     On October 20, 2000, O-TA entered into a Cooperation Agreement with LSMRI (hereinafter "2000 Cooperation Agreement").  (Kesselman Decl., Ex. D.)  Under the terms of the 2000 Cooperation Agreement, O-TA could make purchases from suppliers other than LSMRI if, among other things, LSMRI's pricing was not competitive.  (*See id.* at ¶ 3.)  O-TA and LSMRI also agreed that the "parties should resolve problems they encounter with a spirit of amicable consultation, and consent to request the third party, [Folex], to act as the mediator."  (*See id.*)  The 2000 Cooperation Agreement was signed by O-TA, LSMRI and Folex.  Folex signed the 2000 Cooperation Agreement in its capacity as the agreed upon "mediator" between O-TA and LSMRI.  (*See id.*).

5.     In late 2004, O-TA customers began pressuring O-TA for significant price concessions on O-TA products. (Lin Decl. ¶ 3.) In turn, O-TA advised Folex and LSMRI that it would need price concessions on O-TA purchases from LSMRI. (*Id.*) LSMRI advised that the price of manufacturing titanium was increasing and price concessions to O-TA would be difficult. All three parties discussed the possibility of reducing Folex' commission. (*Id.*)

6.     O-TA was originally instructed to remit payment directly to Folex, and O-TA did so for years. (Lin Decl. ¶ 2.)  The record reflects that Folex would then take its commission and forward the remainder to LSMRI.  In early 2005, LSMRI instructed O-TA to send payments directly to LSMRI for purchases of LSMRI products, and to no longer remit payments through Folex. (*Id.*)  Folex

1    objected to O-TA's compliance with LSMRI's instruction and sent a series of

2    letters threatening legal action to O-TA and LSMRI.  (*See* Lin Decl., Exs. B-E.)

3            **B.    The U.S. Litigation Arising out of the Business Relationship.[3]**

4                    **1.    Folex Sues O-TA and LSMRI.**

5            7.      Folex filed this lawsuit on March 31, 2009.  Folex filed the operative

6    First Amended Complaint ("FAC") on June 26, 2009, and named O-TA, LSMRI

7    and CSIC as defendants.  The FAC alleged 12 causes of action against O-TA, all of

8    which are grounded in the contracts making up the Commission Agreement.

9            8.      On October 4, 2010, this Court granted O-TA's motion for summary

10   judgment on all claims against O-TA. (Kesselman Decl., Ex. F.)

11                   **2.    This Court's Original Summary Judgment Ruling.**

12           9.      This Court, in granting O-TA's motion for summary judgment on

13   statute of limitations grounds in 2010, considered the following evidence:

14           •       In a **November 17, 2004** meeting, Folex' officer, Chris Fu, testified

15                   that an O-TA officer told him, personally, that if Folex did not agree

16                   to reduce its commission, O-TA would cut Folex off from its

17                   commission by routing payment directly to LSMRI.  (Kesselman

18                   Decl., Ex. E at 148:5-150:23.)

19           •       Mr. Fu testified that he became aware that LSMRI and O-TA had

20                   actually breached the Commission Arrangement in **April 2005**.

21                   (Kesselman Decl., Ex. E at 88:22-86:5.)

22

23

24   ---

   [3]   Prior to Folex filing this lawsuit, LSMRI filed a lawsuit against Folex in the Intermediate People's Court of China ("PRC Court") in 2005.  The PRC Court

25   rendered a judgment in favor of LSMRI, finding that Folex had breached its obligations under the Commission Agreement, and ruled that the contracts making

26   up the Commission Agreement were invalid and unenforceable, and dissolved them as of 2005. (Lin Decl. Ex. F at 074-075.)  The PRC judgment was the subject

27   of this Court's second ruling on summary judgment based upon the application of international comity and collateral estoppel.  (Dkt. No. 210.)  The Ninth Circuit

28   reversed this Court's grant of summary judgment on the ground that Folex had not received proper service of the PRC lawsuit, and therefore collateral estoppel could not apply.  (Dkt. No. 225.)

- Mr. Fu further testified that, by **June 6, 2005**, Folex had been told by O-TA and LSMRI officers that to avoid paying commissions to Folex, O-TA and LSMRI had been thinking about changing the name of LSMRI. (Kesselman Decl., Ex. E at 108:20-109:21.) A June 6, 2005 letter from Folex warns O-TA that any such attempt would be a "criminal offense." (Lin Decl., Ex. B at 023.)

- On **June 6, 2005**, Folex transmitted a letter to O-TA (hereinafter "the June 6, 2005 Folex Letter"). (Lin Decl., Ex. B.) In that letter, Folex noted:

  > By the end of April [2005], the financial department of our company [Folex] did not receive payment for goods in March from O-TA…. I called O-TA Company at the start of May to inquire…. O-TA Company unilaterally and on their own, directly remitted payment to LUOYANG without negotiating with our company…. [O-TA] thought they could easily detain our company's commission this way…. Manager Su of your company [O-TA] has no right to interfere. (*Id*. at 013.)

- In the same **June 6, 2005** letter, Folex wrote that it was aware of an effort to change the name or spin off the sales from LSMRI so that LSMRI would no longer pay Folex commissions:

  > Some people in your company have even thought about changing the company name to purchase products from LUOYANG, racking their brains to detain the commission for our company. (*Id*. at 015.)

- Mr. Fu testified that on **June 30, 2005** he was personally told in a face-to-face meeting that LSMRI and O-TA had reached an agreement to exclude Folex from receiving commissions. Mr. Fu testified that he viewed this as a "conspiracy" between O-TA and LSMRI to deprive Folex of its commissions. (Kesselman Decl. Ex. E at 153:13-22 & Ex. G.)

- On **October 14, 2005**, an attorney representing Folex wrote a letter to

4

O-TA ("the O-TA Demand Letter").[4]  (Lin Decl., Ex. C.)  The letter
was written to address "your [O-TA's] violation of the contract
agreement and transaction conventions by way of direct remittance to
[LSMRI]."  (*Id*.)  Among other things, Folex alleged:

> [LSMRI] and O-Ta Company league together at ill will
> and sabotage intentionally the mode of cooperation
> established for many years. The direct settlement of the
> goods payment between [LSMRI] and O-Ta Company is
> on the purpose to turn off FOLEX Company and escape
> the agency commission which [LSMRI] is obliged to pay
> FOLEX Company on the legal base so that [LSMRI] may
> reduce the transaction cost and gain greater profit.

(*Id*. at 026.)

Folex went on to make certain demands and threatened to institute
legal proceedings if those demands were not met.  Folex stated that it
would spend "all costs to solve this international commercial dispute
through all possible legal means in order to maintain the legal interest
of FOLEX Company." (*Id*. at 028.)

- Also on **October 14, 2005**, an attorney representing Folex sent a letter
  to LSMRI ("the LSMRI Demand Letter"). (Lin Decl., Ex. D.)  The
  contents of the LSMRI Demand Letter are virtually identical to the
  contents of the O-TA Demand Letter.

- On **December 2, 2005**, an attorney representing Folex sent a letter to
  O-TA. (Lin Decl., Ex. E.)  In that letter, Folex "accused [O-TA] of
  breaching the contract on the basis of the adequate facts and legal
  ground. If the lawsuit is filed in process, O-Ta will be the co-
  defendant of the case. FOLEX Company will appear to the court
  concerning your [O-TA's] joint liability with [LSMRI]."  (*Id*. at 052)

---

[4]   Mr. Fu testified that he met with at least two law firms, including the
international law firm, Paul Hastings, to pursue legal claims against LSMRI and O-
TA.  (Kesselman Decl., Ex. E at 107:23-108:9 (Fu Depo.).)

5

10.     Based upon the evidence, this Court ruled that "Folex was on notice of its claims against O-TA in 2005." (Kesselman Decl., Ex. F at 6.)  This Court rejected Folex's arguments that the discovery rule or the doctrine of fraudulent concealment should toll the statute of limitations. (*Id*. at 8.)  This Court held that: "Mr. Fu further acknowledged in his testimony that he was advised prior to June 6, 2005 that O-TA and LSMRI were considering changing LSMRI's name to avoid paying commissions to Folex. He stated that he was later only surprised that O-TA and LSMRI had the 'nerve' to carry out this plan." (*Id*.)

### 3.     Folex' Basis For Seeking Reversal at the Ninth Circuit.

11.     Folex appealed this Court's statute of limitations ruling as to five claims.[5]  It argued on appeal that reversal was warranted because, whatever it may have learned earlier in 2005, it was later led to believe in December 2005 that O-TA and LSMRI were no longer doing business together.  Folex claimed this belief was based upon two events that occurred in December 2005:

- On **December 12, 2005**, Shufeng He, a Folex officer, testified that an O-TA official stated at a meeting that "O-TA shall no longer continue doing business with LSMRI, however, I would hope that all the commissions owed by LSMRI to date be resolved through negotiation and proper settlement between the two parties." (Kesselman Decl., Ex. H at ¶ 5.)

- In a **December 31, 2005** letter from LSMRI to Folex, LSMRI advised that "the original industrial entity [LSMRI] that undertakes the casting of titanium alloy has been spun off from our institute." (Kesselman Decl., Ex. I.) In the letter, LSMRI further acknowledged the commission agreement and advised Folex "to dispatch a

---

[5]   Folex only appealed dismissal of its claims for: (1) Breach of Implied Contract; (2) Inducing Breach of Contract; (3) Intentional Interference with Contractual Relations; (4) Fraud; and (5) Accounting. These are the only remaining claims against O-TA.

6

representative to come [to the PRC] for a discussion on the relevant matters.  We hope that both parties will be able to peacefully settle down the remaining issues with the principle of friendly consultation." (*Id.*)

### 4. The Ninth Circuit's 2012 Ruling

12.     Based upon sworn testimony and representations of Folex and its officers, the Ninth Circuit ruled that "a genuine issue of material fact [exists] as to whether Folex was on inquiry notice of its [claims] as of 2005." (Kesselman Decl., Ex. J at 3.)  The Ninth Circuit held that: "[i]f O-TA and LSMRI had truly ceased to do business together, as they allegedly represented to Folex [in December 2005], then Folex would have no contractual right to collect commissions, and thus no claims for damages against O-TA or LSMRI." (*Id.*)

### 5. The Newly Discovered August 20, 2006 Letter Demonstrates Folex Was On Notice of the Alleged Wrongful Conduct in 2005.

13.     After the Ninth Circuit's ruling, O-TA received a complete version of the August 20, 2006 letter that Folex wrote to PRC authorities.[6]  In the letter, Folex states that it knew O-TA and LSMRI were still doing business together and that O-TA and LSMRI statements to the contrary in December 2005 were "false" and a "public fraud."  In Folex's own words:

> On December 31, 2005, the Institute [LSMRI] sent a letter to us, falsely claiming that the Institute stopped its operations of the golf project, and  would not accept orders from customers, and demanded us to immediately  terminate the agency relationship (attachment 9).  Covertly, they manufactured products with the quantity that was

---

[6]   O-TA contends, and Folex has not disputed, that Folex never produced the August 20, 2006 letter in this litigation.  O-TA received the letter from LSMRI in 2013.  O-TA advised the Court that it had received the letter at that time and preserved the right to re-raise the statute of limitations in light of this new evidence. *See* Dkt No. 152 at 8-9 n. 4.

doubled compared to the same period of last year. Thus, the breach of contract became a public fraud. According to the agreement that we had with the Institute [LSMRI], 'during the effective period of the agreement, the performance of the agreement shall not be affected should changes of company's names, shareholders, address, personnel, products and any other factors occur for any reason by any of the two parties that signed the agreement.' . . . We reserve the right to pursue its international criminal responsibilities. (Wang Decl., Ex. B at 030-031.)

As addressed below, the Court agrees with O-TA that this new evidence demonstrates that Folex was on notice of its claims in 2005, and therefore Folex' claims are time-barred.

## II.    CONCLUSIONS OF LAW

### A.    <u>Summary Judgment Standard</u>

14.    Summary judgment is appropriately granted in cases where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial'" and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when the evidence is so one-sided that a party must prevail as a matter of law. It is also appropriate when a party fails to offer sufficient evidence to support any essential element of a claim. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); *Celotex*, 477 U.S. at 322-23.

15.    To meet its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense, or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099 (9th Cir. 200).

16.    A party opposing summary judgment, "may not rely merely on

8

1   allegations or denials in its own pleading; rather its response must . . . set out

2   specific facts showing a genuine issue for trial."   *UMG Recordings, Inc. v. Veoh*

3   *Networks, Inc*., 665 F. Supp. 2d 1099, 1105 (2009).  It must introduce credible

4   evidence demonstrating that a genuine dispute exists as to specific material facts.

5   *Matsushita*, 475 U.S. at 586 n.11, 106 S. Ct. at 1355 n. 11.  This requires more

6   than a "metaphysical doubt . . . Where the record taken as a whole could not lead a

7   rational trier of fact to find for the non-moving party, there is no 'genuine issue for

8   trial.'"   *Id*. at 586-87.

9        17.     Reasonable inferences are drawn in favor of the opposing party.

10  However, to be reasonable, an inference must be based on credible evidence.  Bald

11  assertions based on a mere scintilla of evidence will not preclude summary

12  judgment.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D.

13  Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987); *FTC v. Stefanchik*, 559 F.3d 924,

14  929 (9th Cir. 2009).  Where the record contradicts a party's allegations to the

15  extent that no reasonable jury could believe them, a court is justified in adopting

16  the story supported by the bulk of the evidence.  *Scott v. Harris*, 550 U.S. 372, 127

17  S. Ct. 1769 (2007) (summary judgment granted where evidence discredited

18  claims).

19

20

21

22

23

24

25

26

27

28

**B.**   **The Undisputed Evidence Demonstrates that Folex' Claims Are Time-Barred**

18.     The Court finds that Folex' remaining claims are barred by the applicable statutes of limitations.  Folex filed this lawsuit on March 31, 2009.  As addressed below, the statute of limitations on each of Folex' claims is either two years or three years.  Based upon the now produced August 20, 2006 letter, the Court agrees that, in light of this new evidence, coupled with the existing record evidence, the only inference is that Folex was on notice of its potential claims in 2005.

19.     In granting O-TA's first motion for summary judgment in 2010, this Court ruled that each of Folex' claims was time-barred because Folex was on notice of its claims against O-TA in 2005.  (Kesselman Decl. Ex. F at 6.) The Ninth Circuit reversed this Court's ruling because, viewing all of the facts in a light most favorable to Folex, and drawing all reasonable inferences in its favor, it concluded that there was a genuine issue of material fact as to whether Folex was on inquiry notice of its claims in 2005.

20.     This Court concludes that any question about Folex' notice has now been put to rest by the new August 20, 2006 letter.  In that letter, Folex makes clear that it viewed LSMRI's December 31, 2005 letter as "falsely claiming that the Institute [LSMRI] stopped its operations of the golf project" while "covertly" LSMRI was still "manufacturing products" resulting in a "breach of contract" and a "public fraud."  (Wang Decl. Ex. B at 030-031.)  The letter can only be read to mean that Folex never believed LSMRI had stopped manufacturing titanium for O-TA and other customers. The letter demonstrates that Folex remained on notice of the alleged wrongdoing even after December 2005.

21.     In the August 20, 2006 letter, Folex similarly asserted that LSMRI remained responsible for paying the commissions to Folex notwithstanding "any changes of company's names, shareholders, address, personnel, products and any

10

other factors . . ." (*Id.* at 031) This contemporaneous writing shows that Folex was on notice all along that any change in the name or shareholders of the LSMRI entity producing the titanium should have no impact on Folex' commissions – and Folex went on to write that it reserved the right to pursue what it termed "international criminal responsibilities."[7]  (*Id.*)

22.     Folex' admissions in the new August 20, 2006 letter demonstrates that summary judgment is warranted because, on this record, there are no disputed issues of material fact.[8]   The statute of limitations for Folex' claims at issue are two or three years.  Yet, Folex waited until March 2009 – more than 3 years after it had actual knowledge – to file this action. Because a "plaintiff must bring a claim

---

[7]  Mr. Fu stated in deposition that LSMRI and O-TA officers told him before June 6, 2005 that they were considering changing LSMRI's name to avoid paying commissions to Folex. (Kesselman Decl., Ex. E at 108:20-109:21.) Mr. Fu stated that he was later surprised that O-TA and LSMRI had the "nerve" to carry out their plan.  (*See id.*)  Folex then repeated its assertion in the June 6, 2005 letter written to O-TA: "[s]ome people in your company have even thought about changing the company name to purchase products from LUOYANG, racking their brains to detain commission from our company." (*Id.* at 108:20-25.) And finally in the new August 20, 2006 letter, Folex reiterates its view that changing the name of the company would not relieve LSMRI of its "performance" under the commission agreement. (Wang Decl., Ex. B.)

[8]  In addition to its direct admissions in the August 20, 2006 letter, Folex' officer further admitted under oath that he continued to check the internet on an ongoing basis to investigate potential claims against LSMRI or O-TA.  As Mr. Fu testified, he did not simply stumble across an article in 2008 that put him on notice of the alleged wrongdoing then.  In fact, Mr. Fu had been on inquiry notice for years:
  Q.  How did you read this [2008] publication?
  A.  It was a random check search at Internet.
  Q.  What caused you to do a random check of the Internet?
  A.  Because we had disputing or argument, whatever, caused damage of Folex not receiving the commission payment from O-Ta and LSMRI so every now and then I try to see if anything I can find out what the truth of the matter what's going on.
  Q.  This wasn't the first time that you did a random check of the Internet?  It was not the first time?
  A.  Correct.
  Q.  You had done this before?
  A.  Occasionally.
  Q.  Just to see if something was going on that would relate to the dispute?
  A.  Correct, correct.
(Kesselman Decl., Ex. E at 282:4-21.)

11

within the limitations period after accrual of the cause of action" and Folex failed to do so, Folex' claims are time-barred as a matter of law.  *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 806 (2005).

## C.   Folex' Arguments Do Not Raise a Triable Issue of Fact

23.   In its effort to debunk the August 20, 2006 letter, Folex makes a myriad of arguments.  None of the arguments have merit.

24.   First, Folex argues that the law of the case doctrine precludes this Court from reconsidering the statutes of limitations since it was previously decided by the Ninth Circuit.  Folex' assertion is incorrect.  The law of the case doctrine is not an absolute bar to reconsideration of matters previously decided.  The doctrine merely expresses the practice of the courts generally to reopen what has been decided; it is not a limit on the Court's power.  *Messinger v. Anderson*, 225 U.S. 436, 444 (1912).  "The Court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, that is new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice.  *Merrit v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (additional citations omitted).

25.   Second, Folex argues that even if the August 20, 2006 letter is "new evidence" O-TA's new evidence is not materially essential or substantially different.  This Court disagrees.  The crux of the Ninth Circuit's 2012 ruling hinged on the possibility that Folex actually believed the December 31, 2005 letter from LSMRI.  The August 20, 2006 letter affirmatively eliminates any speculation as to this matter.  In the letter, Folex candidly refers to the December 31 letter as false and continues to state that LSMRI "covertly" continues to manufacture titanium golf heads at twice the quantity from the previous year.  These contentions cannot have been stated in a more unambiguous way.

12

26.     Third, Folex argues that even if this Court were to consider the August 20, 2006 letter, it should only be construed as evidence of its actual knowledge of LSMRI's wrongdoing at the time, not O-TA's wrongful conduct. This argument grasps at straws.  It is incredible for Folex to now suggest that when it wrote to the PRC authorities it was only on notice of LSMRI's "public fraud" but was not also addressing O-TA's conduct.  Indeed, in his June 30, 2005 deposition, Folex' officer, Mr. Fu, testified that he was personally told in a face-to-face meeting that LSMRI and O-TA had reached an agreement to exclude Folex from receiving commissions.  Mr. Fu testified that he viewed this as a "conspiracy" between O-TA and LSMRI to deprive Folex of its commissions. (Kesselman Decl., Ex. E at 153:13-22; *see id.* Ex. G.)  It is therefore far-fetched for this Court to accept the contention that Folex' actual knowledge of the conduct was only limited to LSMRI.

27.     Finally, Folex argues that the new evidence cannot alter the Ninth Circuit's previous ruling because the letter does nothing to unequivocally establish that O-TA's representations on December 12, 2015 were false.  Again, Folex' assertions are incorrect.  While the non-moving party is entitled to the benefit of the doubt, such an inference would stretch all bounds of reason.  On December 12, 2005, an O-TA official stated at a meeting that O-TA would no longer continue to do business with LSMRI.  It is correct that the Ninth Circuit cited this event, along with the December 31, 2005 letter from LSMRI, as creating a genuine issue of material fact as to whether Folex was on inquiry notice of its claims as of 2005. However, these two events are not mutually exclusive.  It would be completely irrational for Folex to believe O-TA's assertions from December 12, 2005 but then distrust LSMRI's letter from December 31, 2005.  In an August 31, 2010 deposition, Folex' officer, Chris Fu, admits that, "O-T[A] became one of the -- actually the only one customer of LSMRI for titanium casting golf club head[s]." (Supplemental Declaration of David W. Kesselman ("Supp. Kesselman Decl."),

Ex. M at 184:2-9.)  Therefore, when Folex stated in the August 20, 2006 letter that LSMRI "[c]overtly … manufactured products with the quantity that was doubled compared to the same period of last year," the only reasonable inference is that Folex was implying an ongoing and, in fact, growing relationship between LSMRI and O-TA. (Wang Decl., Ex. B at 030-31.)

28.    While Folex still contends that it had no actual knowledge of the alleged wrongdoing, it was, at the very least, under inquiry notice and could have discovered it through the exercise of reasonable diligence.  *See, e.g., Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1111 (1988) (where plaintiff has even "a suspicion of wrongdoing and therefore an incentive to sue, she must decide whether to file or sit on her rights.").

## D.    Applicable Statutes of Limitations Bar Folex' Fourth, Sixth, Seventh and Tenth Claims

29.    In light of the deposition testimony of Folex' officer, Mr. Fu, and the discovery of the August 20, 2006 letter, this Court finds that there is no genuine issue of material fact that Folex had notice of its claims against O-TA for the alleged breach of contract, inducing breach of contract, intentional interference with contractual relations and fraud in 2005.

30.    Folex filed this lawsuit on March 31, 2009.  Because Mr. Fu's deposition testimony makes clear that he had knowledge of Folex' claim in 2005, and because the events in December 2005 clearly did not make Folex think otherwise, the following claims are barred by the statute of limitations as a matter of law:

(1)    The Fourth Cause of Action for breach of an implied-in-fact contract.  The applicable statute of limitations is two (2) years.  Cal. Civ. Proc. Code § 339(1); *Barton v. New United Motor Mfg., Inc*., 43 Cal. App. 4th 1200, 1206 (1996).  The claim is time-barred.

14

(2)    The Sixth and Seventh Causes of Action for wrongfully inducing breach of contract and intentional interference with contractual relations. The applicable statute of limitations for the torts of inducing breach of contract and interfering with contractual relations is two (2) years.  Cal. Civ. Proc.§ 339(1); *Boys Town, U.S.A., Inc. v. World Church*, 349 F.2d 576, 579 (9th Cir. 1965); *Knoell v. Petrovich*, 76 Cal. App. 4th 1464, 1468 (1999).  These claims are time-barred.

(3)    The Tenth Cause of Action for fraud.  The applicable statute of limitations for fraud is three years.  Cal. Civ. Proc. Code § 338(d).  The claim is time-barred.

(4)    The Fifteenth Cause of Action for accounting.  Under California law, this claim is deemed a common count, which is not a specific cause of action but rather must stand or fall on Folex' other claims against O-TA. *McBridge v. Boughton,* 123 Cal. App. 4th 379, 394-95 (2004).  Because this claim is not a stand-alone claim, and for the reasons set forth herein, it must be dismissed.  Folex cannot use a common count claims as a basis to get around the shorter statute of limitations on underlying claims.  *Filmservice Labs, Inc. v. Harvey Bernhard Eners., Inc.*, 2008 Cal. App. 3d 1297, 1308 (1989).

## III.    FOLEX' EVIDENTIARY OBJECTIONS RELATING TO DOCUMENTS RELIED UPON BY THE COURT ARE OVERRULED

31.    Folex' evidentiary objections to the Lin Declaration, including Exhibits A, D and G, are overruled for the reasons set forth in the Court's prior order dated December 2, 2010. (Dkt. No. 8 at ¶ 45.)  As this Court previously ruled, these documents were signed by, prepared by or prepared at the request of Folex itself.  Mr. Fu of Folex authenticated the documents at the time of his deposition.  Indeed, the Court notes that Exhibit A is simply an English translation of the 1996 commission agreement that Folex attached to the FAC.  Accordingly, the documents, which serve only to provide additional background information to the Court's findings on summary judgment, are admissible.

32.     Folex' evidentiary objections to the Wang Declaration, including Exhibit B, are overruled for the same reasons set forth in the Court's prior order dated May 9, 2013. (Dkt. No. 210). Although the Ninth Circuit reversed the ruling on summary judgment as it related to international comity and collateral estoppel, the Court notes that Folex did not appeal this Court's evidentiary rulings.  The August 20, 2006 letter is admissible as a business record.  The content of the letter is admissible as an admission of a party opponent.  The Court notes that Chris Fu, Folex' officer, expressly admitted in deposition that Folex sent a complaint letter to the CPC Central Committee.  (Kesselman Decl., Ex. E at 44 & Supp. Kesselman Decl., Ex. M at 45-46.)

## IV.     CONCLUSION

33.     As Folex has not demonstrated that there exists genuine issues of material fact as to any of its remaining claims against O-TA, the Court hereby GRANTS O-TA's motion for summary judgment.


**IT IS HEREBY ORDERED.**


Dated:  November 13, 2015

_____
THE HON. MANUEL L. REAL
UNITED STATES DISTRICT JUDGE